IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CEDRIC D. DOLES,
  Petitioner,

v.        Case No.  5:11cv164/RS/CJK

MICHAEL D. CREWS,
  Respondent.
_____

## REPORT AND RECOMMENDATION

  Before the Court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 6).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 19).  Petitioner replied.  (Doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the amended petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

  On November 29, 2006, petitioner was charged by Information filed in the

Circuit Court for Bay County, Florida, Case No. 06-2883, with Possession of Cocaine with Intent to Distribute, a second-degree felony (Count I), Possession of Drug Paraphernalia, a first-degree misdemeanor (Count II), and Resisting an Officer Without Violence, a first-degree misdemeanor (Count III). (Doc. 19, Ex. C, pp. 14-15).[1] Petitioner proceeded to trial on Count I, the felony charge, (ex. D), and was found guilty as charged of Possession of Cocaine with Intent to Distribute. (Ex. C, p. 61). Petitioner was adjudicated guilty of the felony and sentenced to 15 years imprisonment. (*Id*., pp. 67-71). Petitioner filed a notice of appeal. (*Id*., pp. 76, 78). The appeal was assigned Case Number 1D07-2959. Petitioner's appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made in the appeal. (Ex. E). Petitioner was given the opportunity to file a *pro se* brief. (*See* Ex. B). Petitioner did not file a *pro se* brief. (*Id.*). Petitioner's judgment of conviction was affirmed, per curiam and without written opinion, on February 21, 2008. *Doles v. State*, 975 So. 2d 1136 (Fla. 1st DCA 2008) (Table) (copy at Ex. F).

On June 27, 2008, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. I, pp. 90-122). The postconviction court appointed petitioner counsel, held an evidentiary hearing and denied relief. (Ex. J). The Florida First District Court of Appeal ("First DCA") summarily affirmed. *Doles v. State*, 48 So. 3d 54 (Fla. 1st DCA 2010) (Table) (copy at Ex. N). The mandate issued November 24, 2010. (Ex. Q).

While petitioner's postconviction proceeding was pending, petitioner filed a state habeas petition in the First DCA, alleging ineffective assistance of appellate counsel. (Exs. R, S). On October 7, 2009, the First DCA per curiam denied the

---

[1]All references to exhibits are to those provided at Doc. 19, unless otherwise noted.

petition "on the merits", citing *Wilson v. State*, 889 So.2d 114 (Fla. 4th DCA 2004).
*Doles v. State*, 18 So. 3d 1231 (Fla. 1st DCA 2009) (copy at Ex. U).

On July 12 ,2010, petitioner filed a motion to correct illegal sentence under
Florida Rule of Criminal Procedure 3.800(a). (Ex. W, pp. 1-4). The trial court denied
the motion on August 25, 2010. (*Id*., pp. 5-6). The First DCA summarily affirmed.
*Doles v. State*, 50 So. 3d 1139 (Fla. 1st DCA 2010) (Table) (copy at Ex. Z). The
mandate issued January 19, 2011. (Ex. AA).

Petitioner filed his original federal habeas petition in this Court on June 1,
2011. (Doc. 1, p. 1). Petitioner's amended petition was filed on August 12, 2011.
(Doc. 6, p. 1).

After petitioner filed his amended § 2254 petition, he filed a second state
habeas petition in the First DCA on September 16, 2011. (Doc. 19, Ex. CC). On
October 19, 2011, the First DCA per curiam denied the petition, citing *Baker v. State*,
878 So.2d 1236 (Fla. 2004). *Doles v. State*, 72 So. 3d 302 (Fla. 1st DCA 2011) (copy
at Ex. DD). Petitioner also filed another motion to correct illegal sentence under
Florida Rule of Criminal Procedure 3.800. (*See* Ex. A). The trial court dismissed the
motion on October 19, 2011. (*Id*.). The First DCA summarily affirmed. *Doles v.
State*, 93 So. 3d 1015 (Fla. 1st DCA 2012) (Table).

Respondent filed his response to petitioner's amended federal habeas petition
on March 12, 2012. (Doc. 19). Petitioner filed his reply on April 26, 2012. (Doc.
21). Eight months later, on December 28, 2012, petitioner submitted a document to
this Court titled "Motion to Leave Brief." (*See* Doc. 22). The document was not in
compliance with several of the Court's Local Rules, and was returned to petitioner
without filing. The deficiency order returning the document advised petitioner that

to the extent he sought to amend his reply "brief", he must file a motion to amend accompanied by his proposed amended reply. (*Id*.). Petitioner re-filed his "Motion to Leave Brief". (Doc. 23). The undersigned denied the motion in an order entered January 29, 2013, for the reasons outlined in that order. (Doc. 24).[2] On February 7, 2013, petitioner submitted for filing a document titled "Motion for Extension of Time to Amend Habeas Corpus". (*See* Doc. 25). The document was not in compliance with the Court's Local Rules, and was returned to petitioner without filing. (*Id*.). Petitioner resubmitted the motion after correcting the deficiencies. (Doc. 26). Petitioner's motion for extension of time sought "a 30 day extension of time in which to file its amended habeas corpus". (*Id*., p. 2). On February 28, 2013, the undersigned denied the motion for extension of time without prejudice as premature, as petitioner had not sought or been granted leave to amend his amended petition. (Doc. 27). The undersigned delayed issuance of this Report and Recommendation for thirty days. To date, petitioner has not filed a motion to amend his first amended petition, or submitted a proposed second amended petition.

---

[2]Petitioner asserted in support of his "Motion to Leave Brief" that he "has relevant material facts to present of sufficient merit which will support his primia [sic] facie claim on the records face. The material facts are revelant [sic] in support of a meritorious claim on the sufficiency of evidence utilized in the instant cause of the case at bar." (Doc. 23, pp. 1-2). The undersigned ruled that petitioner had ample opportunity to present support for his claims in his amended petition (doc. 6), supporting memorandum (doc. 7), and reply (doc. 21), and that petitioner failed to show good cause why the Court should allow an additional "brief". The undersigned further ruled that petitioner failed to show how the "facts" or evidence he sought to present in his "brief" were relevant to any of the claims raised in the amended petition, as petitioner's amended petition did not assert a constitutional challenge to the sufficiency of the evidence, but instead presented three claims of ineffective assistance of counsel and a sentencing claim. *See* Rule 7, Rules Governing Section 2254 Cases in the United States District Courts (providing for expansion of the record to include additional material relevant to the petition).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786,

178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is

premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

DISCUSSION

Ground One      "Denial Of Effective Assistance Of Counsel; For Failing To
                Move For A Pretrial Suppression Of Evidence Based Upon
                Traffic Stop." (Doc. 6, p. 4 and supporting memorandum at Doc.
                7, pp. 1-5).

Petitioner asserts that trial counsel was constitutionally ineffective for failing

to move to suppress evidence obtained during what he contends was an unlawful

traffic stop. Petitioner asserts that he presented this claim to the state court in his

Rule 3.850 motion for postconviction relief. Petitioner argues in his supporting

memorandum that the state court's denial of relief on this claim is contrary to *Terry*

*v. Ohio*, 392 U.S. 1, 33-34, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). (Doc. 7, p. 1).

Respondent asserts that petitioner's claim is without merit, because petitioner

has not established that the state court's denial of relief was contrary to *Strickland v.*

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), based on an

unreasonable application of *Strickland*, or based on an unreasonable determination

of the facts. (Doc. 19, pp. 17-23).

A.     Clearly Established Federal Law

In *Strickland v. Washington*, the Supreme Court set out a two-part inquiry for

ineffective assistance claims. A petitioner must show that (1) his counsel's

performance was constitutionally deficient, and (2) the deficient performance

prejudiced the petitioner. *Strickland*, 466 U.S. at 687. "First, petitioner must show

that 'counsel's representation fell below an objective standard of reasonableness.

Second, petitioner must show that 'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d

144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694). Where an ineffective assistance claim is based on trial counsel's failure to litigate a Fourth Amendment claim by filing a motion to suppress, a petitioner must prove: (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.    Federal Review of State Court Decision

Petitioner raised, as Ground Two of his Rule 3.850 motion, the following claim:  "Ineffective Assistance Of Trial Counsel – Failure To Move The Court Pretrial To Suppress Evidence Obtained Via Tainted Traffic Stop". (Ex. I, pp. 94-96). The state court held an evidentiary hearing and, at the close of the hearing, denied relief as follows:

> The motion to suppress the tainted traffic stop, the, there's been no evidence to support that a motion to suppress was a proper motion to be filed.  In other words, there's no showing of any grounds that would support the filing of a motion to suppress other than, quote, "a motion to suppress should have been filed," unquote.  And the, the allegation that you say the driver of the vehicle was cited for a, making an unlawful turn, but the defendant was never cited and the charge of resisting arrest was dropped, therefore any search and seizure is unlawful.  That's your claim, but you haven't presented any evidence to support that on your motion.  What's more important is that you keep saying tainted traffic stop, but if the, if the driver was cited for an unlawful U-turn, then they have the right to commit, that's a traffic stop.  And you haven't shown that it was a tainted traffic stop or presented any evidence to suggest that you would have been successful if you had filed a motion to suppress.

> THE DEFENDANT:  Yes, sir.

> THE COURT:  And that's part of your requirement in filing an 8-5-0, is not just to say, well certain things maybe shoulda/coulda been done, but to show some basis that if this were raised or should've been raised, it had a chance of being successful.  And because it wasn't filed and therefore wasn't, didn't have a chance to be successful, that impacted adversely to you at your trial.  And you haven't presented any evidence on those points to support that allegation.  It appears from the record that it was a valid traffic stop involved in an unlawful U-turn.  You were the passenger, alleged to be the passenger in the vehicle and of course  you

were never cited because they can't cite you for anything and they don't have to cite you for anything if you're the passenger in a vehicle that was lawfully stopped. And then what happened after that, there are certain things that law enforcement can do if there's a valid traffic stop. For example, they can order the driver and the passenger out of the vehicle in a valid traffic stop, and there's case law on that point. And then the problem is that the allegations were that you then ran, and so that created another issue after the fact.

. . . . [Discussion of petitioner's other grounds for postconviction relief]

The point is that I agree with the State. At this point in time, there's not evidence to support any finding of ineffective assistance of counsel as alleged in the motion that you've made. And without that evidence, there's not anything the Court — the Court can't guess and the Court can't suppose. The Court has to look to what the evidence is and it hasn't been developed to this point in time. And so, with that in mind, the Court will deny the motion for post-conviction relief based upon the failure to present sufficient evidence to support the allegations contained in the motion.

(Ex. J, pp. 199-202). The First DCA summarily affirmed.

This Court's review under § 2254(d)(1) is limited to the record that was before the state court. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). The state court record contained, among other documents, the trial transcript and the Rule 3.850 evidentiary hearing transcript. At the Rule 3.850 evidentiary hearing, petitioner, through counsel, called as a witness trial counsel Joel Margules. (Ex. J, p. 154). Mr. Margules testified to the following.

Mr. Margules had worked as a public defender in the Fourteenth Judicial Circuit since October of 2005. (Ex. J, pp. 154-55). In that time Margules worked over 100 felony matters. (*Id*., p. 155). Mr. Margules represented petitioner in several cases, including the case at issue here. (*Id*.). Mr. Margules engaged in pre-trial

discovery in this case, including deposing the arresting officers – Officer Jenkins and Officer Montgomery. (*Id*., p. 156). Mr. Margules testified that the officers' deposition testimony was consistent with their trial testimony. Mr. Margules described the circumstances surrounding petitioner's arrest as follows:

> What transpired is he was in a car with Ciara Kraft, who had taken a U-turn illegally, according to Officer Jenkins. Jenkins made a stop. Mr. Doles and Miss Craft got out of the car. A second officer pulled up. They asked Mr. Doles to stand by. He appeared to be nervous. They asked him to wait and he took off running. There were three officers who eventually tackled him and they found drugs. One of the officers, if I recall, testified that he had dropped some drugs just before they tackled him. And then, of course, they arrested him.

(*Id*., p. 156). Mr. Margules testified that there was initially some discussion with the officers of whether petitioner was wearing his safety belt, specifically that, when the officers walked up to the car they didn't see petitioner wearing a belt. (*Id*., p. 157). Mr. Margules reviewed the officers' deposition testimony and the evidence, and conducted legal research to see if there was any legal basis to argue a motion to suppress. Margules found no credible basis to file a motion to suppress. (*Id*., p. 158). Mr. Margules stated that if there is no ground for a motion, he will not file it. (*Id*., p. 158). Mr. Margules received a *pro se* motion to suppress from petitioner, which Margules reviewed with his supervisor, Doug White, and they determined there was not a basis to file additional motions or to adopt the *pro se* motion. (*Id*., p. 159). At trial, Mr. Margules argued for judgment of acquittal, but he did not argue any suppression issues because he did not see any to argue. (*Id*., p. 160). Although Mr. White initially sent petitioner a letter stating that Mr. Margules "is preparing a motion to suppress which should be submitted for hearing in the very near future," the letter was sent before Mr. Margules had completed his research, which, upon conclusion,

found there was no credible ground to file a motion to suppress. (*Id*., pp. 160-61, 176). Mr. Margules reviewed the issues relating to a motion to suppress with petitioner and told petitioner that he did not have any credible motion that could be filed. (*Id*., p. 163). Mr. Margules never adopted petitioner's *pro se* motion to suppress because there was no basis for it. (*Id*.). After petitioner's postconviction counsel obtained the foregoing testimony from Mr. Margules, petitioner interjected that he wished to proceed on his postconviction motion without counsel. (*Id*., pp. 165-68). Petitioner discharged postconviction counsel and represented himself for the remainder of the hearing. (*Id*.). Petitioner questioned Mr. Margules about possible grounds for suppression, including the fact that petitioner was never cited for a seat belt violation. Mr. Margules explained that he investigated that issue, but found it did not provide a basis to file a motion to suppress. (*Id*., p. 180). Later, Mr. Margules explained:

> There wasn't any grounds to suppress at that point in time. They hadn't charged you with not wearing a seatbelt. When that individual got out of the car, again, according to the video as I recall it, it appeared that individual, who appeared to be you, looked to be nervous, jumping around. There was a question of police safety and that's why they asked you to stand down. And at that point in time, that individual, who appeared to be you on video, took off running. But they didn't charge you with the not wearing a seatbelt, so there was no issue regarding a seatbelt to suppress.

(Ex. J, p. 188).

When petitioner indicated that he wished to present argument rather than question Mr. Margules, the State asked the court to find that petitioner failed to supply the court with sufficient evidence to meet his burden of proof on each of the postconviction claims. (Ex. J, p. 194). The State argued:

Judge, I believe that at this point the burden is on Mr. Doles to go forth and present sufficient proof as to each of these allegations. . . .

The second allegation was that the defense attorney had been ineffective for failure to move to the court for a pre-trial motion to suppress the evidence of the stop. The witness has testified under direct examination, first by counsel who was representing Mr. Doles and then by Mr. Doles' own questioning. The author, the witness has repeatedly indicated he had researched the issue, he had done the depositions of the witnesses and that based on his recollection and review of the evidence, the depositions of the witnesses and the law, there was not an appropriate basis to file any type of a motion to suppress. The witness has also gone into and explained that – the sequence basically – and explained the exhibits that had been introduced by defense counsel before he was relieved; the letter written by Mr. White and also a motion that Mr. Doles had prepared himself. The witness has testified that he had consulted with Mr. White on a case, that, at that point, I believe, Mr. White had written the letter to Mr. Doles explaining that counsel was involved and working on the case and whatever motions or what-have-you would be filed. The witness has explained it. After the witness's conference with Mr. White, he continued with his review of the case law and determined that there was no basis for a legal motion to suppress.

The witness has explained that he also chose not to adopt the defendant's pro se motion to suppress because, again, there was no legal basis and he could not make a good faith claim of adopting this motion if there was no legal basis. So, I believe that, as to that second element or that second part of the defendant's motion for the 3.850 relief, that he has failed at this point to provide sufficient evidence to substantiate that claim.

(*Id.*, pp. 194-95). The postconviction court asked petitioner if he had any other evidence to present. (*Id.*, 198). Petitioner said he did not. (*Id.*). The court then ruled, as detailed above. A copy of petitioner's *pro se* motion to suppress appears in the record. Petitioner's sole proffered basis for suppression was that Officer Jenkins

"illegally" stopped the car with no probable cause for the stop. (Ex. A, p. 18).

The state court's rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the appropriate standard as identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984), and *Kimmelman*, 477 U.S. at 375. There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

The state court's rejection of petitioner's claim was not an "unreasonable application" of *Strickland*, nor was it based on an unreasonable determination of the facts. Mr. Margules testified that he made a strategic decision not to file a motion to suppress after deposing the arresting officers, reviewing the evidence and researching the law, because he concluded that there was no valid basis to move for suppression. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable". *Strickland*, 466 U.S. at 690-91. Petitioner failed to show that Mr. Margules' decision was unreasonable, that there was a valid argument for suppression, or that Margules' decision prejudiced him. The facts surrounding the stop are contained in the record. The driver of the vehicle petitioner was in was legally stopped based on an illegal U-turn. *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") Officer Jenkins testified that he made the traffic stop for an illegal U-turn, because the driver of the vehicle did a U-turn and in performing the U-turn almost hit a mailbox and cut off traffic coming from the opposite direction. (Ex. D, pp. 18-19; Ex. J, pp. 156, 188); *see* Fla. Stat. § 316.1515 (2005) (stating that "The driver of any vehicle shall not turn

the vehicle so as to proceed in the opposite direction upon any street unless such movement can be made in safety and without interfering with other traffic and unless such movement is not prohibited by posted traffic control signs."). When the vehicle stopped, petitioner and the driver immediately stepped out of the vehicle without being asked. In the interest of officer safety, Jenkins called for a back-up unit. (Ex. D, p. 20). Officer Montgomery and Corporeal Hines arrived. Officer Jenkins asked Officer Montgomery to stand next to petitioner while Jenkins talked to the driver. Jenkins ordered the investigatory detention of petitioner because when Jenkins stopped the vehicle, it appeared petitioner was not wearing his seatbelt. During the investigatory detention petitioner acted "very agitated, didn't want to stay still." (*Id.*, p. 21). Jenkins arrested the driver for driving without a valid driver's license, and started searching the vehicle. (*Id.*, p. 21). As Jenkins conducted his search, Officer Montgomery observed petitioner "standing in front of the car real fidgety", and asked petitioner if there was anything on his person that he (Montgomery) "should be concerned about." (*Id.*, p. 67). In response, petitioner suddenly fled headlong. (Ex. D, pp. 18-21, 67; Ex. J, pp. 156, 188). Officer Montgomery caught up with petitioner and pulled him to the ground. (Ex. D, p. 68). Once Montgomery got petitioner to the ground, petitioner placed his hands underneath himself. (*Id.*, p. 68). Officers Jenkins and Montgomery gave petitioner several verbal commands to show his hands and put them behind his back. Petitioner refused and resisted Officer Montgomery's attempts to get petitioner's hands out from underneath him. (*Id.*, pp. 22, 68, 69). It took three officers – Officers Jenkins, Officer Montgomery and Corporal Hines – to get petitioner to straighten his arms outward. (*Id.*, p. 23). After the officers straightened out petitioner's arms, petitioner kept his hands "closed up real tight and he had a

plastic bag containing a white substance and he was squeezing it very, very tight and the plastic bag was basically coming in between his fingers.  You could see him squeezing a white substance." (*Id*.).  Jenkins testified that there was a large amount of the white substance and that, based on his training and experience, he believed the substance to be crack cocaine.  (*Id*., pp. 23-24).  After giving petitioner repeated verbal commands to open his hands and drop whatever was in his hands, petitioner opened his hand, revealing two plastic baggies containing crack cocaine.  (*Id*., p. 24).

Petitioner argues that he had a viable motion to suppress on the theory that the officers did not have reasonable suspicion to detain him at the vehicle and, without such, his encounter with them was consensual, he was free to leave, and the officers' pursuit and detention after he fled was illegal.  In *Terry*, the Supreme Court held that an investigatory stop requires a "well-founded suspicion that the person has committed, is committing, or is about to commit a crime".  *Terry v. Ohio*, 392 U.S. at 30, 88 S. Ct. 1868.  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.  The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity."  *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) (*citing United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989), *and Terry, supra*, 392 U.S. at 27).  "[W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business."  *Wardlow*, 528 U.S. at 125 (*citing Florida v. Royer*, 460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)).  Any "refusal to cooperate, without more, does not furnish the minimal level of objective

justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

Petitioner's postconviction counsel asked Mr. Margules at the evidentiary hearing if, during Margules' legal research Margules read the case of *Morrow v. State*, 848 So. 2d 1290 (Fla. 2d DCA 2003). (Ex. J, p. 163). Mr. Margules did not recall, but explained later during questioning by petitioner that "[t]here is some case law that says that a defendant cannot be arrested for not wearing a seatbelt . . . but, again, I didn't – since they didn't charge you with the seatbelt violation, I didn't see any grounds to file a motion to suppress." (Ex. J, p. 180). In *Morrow* the Florida Second District Court of Appeal held that an officer lacked a reasonable suspicion of criminal activity to justify an investigatory detention of a front seat passenger where the officer testified that he did not know whether the passenger had been wearing a seat belt while the car was moving. 848 So. 2d at 1292. Even assuming Officer Jenkins did not have reasonable suspicion to detain petitioner at the vehicle for a seat belt violation, a reasonable attorney could conclude that petitioner's agitated, nervous behavior at the vehicle and sudden unprovoked headlong flight provided the officers reasonable suspicion to investigate petitioner further. *Wardlow*, 528 U.S. at 124, 120 S. Ct. 673 (holding that defendant's presence in high crime area and unprovoked, "[h]eadlong flight" upon noticing the police, was suggestive of wrongdoing and provided officers reasonable suspicion to justify an investigatory detention). As the Supreme Court explained in *Wardlow*: "Our cases have . . . recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." 528 U.S. at 124, 120 S. Ct. 673 (citations omitted). Upon the officers' further investigation, they found

petitioner in possession of crack cocaine. Thus, although Officer Jenkins may have lacked reasonable suspicion to detain petitioner at the vehicle for a seat belt violation, and petitioner's mere going about his business would not have provided the officers reasonable suspicion to investigate him further, that is not what happened. Petitioner's behavior and flight were "not a mere refusal to cooperate" or "going about one's business" but "just the opposite", *Wardlow*, 528 U.S. at 125, 120 S. Ct. 673, and provided the officers reasonable suspicion to investigate further. The state court reasonably concluded that petitioner failed to establish he had a meritorious Fourth Amendment claim, that trial counsel performed deficiently and that counsel's performance prejudiced him.

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two     <u>"Denial Of Effective Assistance Of Counsel, Failure To Object To Improper Comments By State Prosecutor."</u> (Doc. 6, p. 4 and supporting memorandum at Doc. 7, pp. 5-7).

Petitioner claims trial counsel was constitutionally ineffective "when counsel under the guise of misidentification defense allowed the State to imply Petitioner is a liar." (Doc. 6, p. 4). Petitioner elaborates in his memorandum that the prosecutor argued and presented evidence (the testimony of law enforcement officers and petitioner's twin brother) that petitioner gave a false name (petitioner's twin brother's name) upon being arrested. Petitioner asserts that this prejudiced the jury by implying that he was a liar. Petitioner argues that trial counsel should have filed a pretrial motion to suppress that evidence "as inadmissible" and should have objected to the

prosecutor's remarks. Petitioner asserts that he exhausted this claim by presenting it in his Rule 3.850 motion.

Respondent asserts that to the extent this is the same claim petitioner presented as Ground Three of his Rule 3.850 motion, the claim is without merit. To the extent petitioner's present claim is not the same as the one raised in state court, the claim is procedurally defaulted. (Doc. 19, p. 24).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.     Federal Review of State Court Decision

Petitioner presented this claim to the state court as Ground Three of his Rule 3.850 motion. (Ex. I, pp. 97-99). The state court denied relief after an evidentiary hearing, as follows:

> And then the issue about the identification. You've claimed, I believe all along, that you were not there, it wasn't you. It was your brother or somebody, it wasn't you that was in this process. At least that's my understanding of part of the defense was that, you know, the police made a mistake. And so there was an issue of identification during the trial, in addition to the false name, and quite frankly, it was the false name that gave rise to the issue of the identification. But part of the trial involved your brother testifying and I believe his testimony was that yes, he was in the car with Ms. . . . . whatever her name was – Sinclair? Or was that the street?
>
> THE DEFENDANT:  Ciara Kraft.
>
> THE COURT:  Ciara, that's right. Ciara. yeah.
>
> That yes, he was there, but he wasn't there when the car was stopped. He had gotten out of the car before the car was stopped and he

was there watching somebody else get into the car, but he couldn't identify who that person was, but it wasn't him. And then, according to him, he couldn't identify who was in the car and he apparently watched the video tape and he, he indicated it was a large individual, but he didn't know and couldn't recognize the face of who that individual was, bu he knew it wasn't him. And that took away, so to speak, that issue of the name and concern about misidentification and having the wrong person in custody, based upon the facts and circumstances surrounding that case.

The point is that I agree with the State. At this point in time, there's not evidence to support any finding of ineffective assistance of counsel as alleged in the motion you've made. . . And so, with that in mind, the Court will deny the motion for post-conviction relief based upon the failure to present sufficient evidence to support the allegations contained in the motion.

(Ex. J, pp. 200-02). The First DCA summarily affirmed.

The state court's denial of relief was consistent with *Strickland*. Mr. Margules explained during the postconviction evidentiary hearing that he chose not to object to the evidence of petitioner's giving a false name, because counsel knew that identification was an issue in the case (whether it was petitioner or his twin brother who was involved in the traffic stop, flight and arrest on the night in question); that the evidence was relevant to that issue; and that neither the evidence, nor the prosecutor's remarks were improper or objectionable.

Q [petitioner's postconviction counsel Mr. Alldredge]. Do you recall if evidence was presented that the defendant gave a false name?

A [Mr. Margules]. Yes.

Q. And did you object, do you recall, to questions in regards to those issues?

A. I did not object, no.

Q. Was there any motions in limine filed to prohibit questioning regarding giving a false name?

A. No.

Q. Did you believe that was a critical issue in the trial?

A. No.

Q. Do you believe that caused prejudice to the defendant's case in trial, the fact that evidence was presented showing he provided a false name?

A. No.

(Ex. J, p. 164). After petitioner discharged postconviction counsel, petitioner asked Mr. Margules about the issue:

> Q [petitioner]. Why did you allow Mr. Kelley to state that I was the one that gave, I mean, that gave the police a fake name on August the 18th when that wasn't' a fact that I was charged with. As a matter of fact, I wasn't the person that was never arrested on August the 18th, but you let him present that, in front of the jury, that I gave police an alias name.
>
> A [Mr. Margules]. As I recall, again, the amended booking sheet showed that you were the person who they had picked up. The video that was played for the jury clearly showed that you were the individual who was in the car that day, that you were the person who the police had arrested. So that's why I didn't object to that, because I didn't think there was anything from a legal standpoint that I could object to to Mr. Kelley's question.

(Ex. J, pp. 174-75).

The Rule 3.850 court's findings of fact are presumed correct. Petitioner has not rebutted that presumption with clear and convincing evidence to the contrary. In

light of the record before the state court, including the trial transcript and the evidentiary hearing testimony, the state court reasonably concluded that the evidence of petitioner providing a false name was relevant, that petitioner failed to show trial counsel's decision not to object was unreasonable, and that petitioner further failed to show he was prejudiced by counsel's failure to object.

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three      <u>"Denial Of Effective Assistance Of Counsel. Cumulative Errors Of Counsel."</u> (Doc. 6, p. 5 and supporting memorandum at Doc. 7, pp. 7-8).

Petitioner asserts that "Counsel rendered ineffective assistance by the cumulative errors, which deprived him of his Sixth Amendment Right to have an effective counsel. The cumulative errors prejudiced Petitioner where counsel wasn't a good advocate on behalf of Petitioner." (Doc, 6, p. 5). Petitioner does not elaborate further, except to refer this Court to his supporting memorandum. Petitioner's discussion of Ground Three in his supporting memorandum does identify any specific error or failure by counsel. (Doc. 7, pp. 7-8). The state postconviction court rejected petitioner's claim of "cumulative error" without expressly addressing it. *See Johnson v. Williams*, 2013 WL 610199, at *7, — U.S. —, 133 S. Ct. 1088, — L. Ed. 2d — (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits. . . .").

Respondent asserts that petitioner's claim, which does not identify any specific

acts or omissions, "is not a cognizable claim and the State court's rejection of it is not an unreasonable application of federal law as interpreted by the United States Supreme Court." (Doc. 19, p. 25). Respondent explains that the state court could not have acted contrary to Supreme Court authority, because there is no federal constitutional claim of cumulative error based on ineffective assistance. (*Id*., p. 26).

In rejecting a similar "cumulative error" argument made by a § 2254 habeas petitioner, the Eleventh Circuit stated: "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr*., 342 F. App'x 560, 564 (11th Cir. 2009) ( per curiam ). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id*. at 564-65 (*quoting United States v. Cronic*, 466 U.S. 648, 659 n. 26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's rejection of petitioner's claim is not contrary to or an unreasonable application of clearly established Federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 747, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law.") (internal

quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Reese v. Sec'y, Fla. Dep't of Corr*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

Even if the Court reviewed petitioner's "cumulative error" claim *de novo* and liberally construed it as incorporating Grounds One and Two above, petitioner is not entitled to relief because he has not demonstrated that either of trial counsel's alleged errors, or any supposed, but unalleged errors, considered alone, rose to the level of ineffective assistance. Thus, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four  <u>"Trial Court Invaded The Province Of The Jury By Sentencing Petitioner For Offense Not Found By Jury."</u> (Doc. 6, p. 5).

Petitioner's final claim is that "the trial court invaded the province of the jury when he sentenced petitioner to 15 years for possession of cocaine with intent to sell. The jury verdict was contrary to that charged in information where jury failed to make a specific finding of intent." (Doc. 6, p. 5). Petitioner asserts that he presented this claim to the state court in his motion to correct illegal sentence filed under Rule 3.800(a). (*Id*.). Petitioner does not address this claim in his supporting memorandum or in his reply. (Docs. 7, 21). Respondent asserts that petitioner's claim is without

merit. (Doc. 19, p. 29).

Petitioner presented this claim to the state court in his Rule 3.800(a) motion filed on July 12, 2010. (Ex. W, pp. 1-4). The trial court denied the motion as follows:

> The Defendant has filed a Rule 3.800(a) motion, alleging that the trial court invaded the province of the jury when it enhanced his sentence without a specific finding by the jury that he intended to sell cocaine. However, contrary to Defendant's claims, the trial transcript reflects that it was the jury who determined that he possessed the cocaine with intent to sell. The jury was instructed regarding the elements of the crime that the State had to prove before the Defendant could be found guilty of that offense. After considering the evidence presented, the jury returned a verdict finding the Defendant guilty of that offense as charged in the information. His sentence of 15 years was not an enhanced sentence but within the statutory maximum for a second degree felony.

(Ex. W, p. 5). The First DCA summarily affirmed.

A.    Clearly Established Federal Law

The Supreme Court has held that under the Sixth Amendment, a fact – other than a prior conviction – that increases a statutory maximum sentence must be admitted by a defendant, proved to a jury beyond a reasonable doubt, or so proved to a judge if the defendant waives a jury trial on the issue. *See, e.g., United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

B.    Federal Review of State Court Decision

The record amply supports the state court's finding that the jury made a specific finding that petitioner possessed the cocaine with intent to sell. The jury verdict expressly states: "The Defendant is guilty of Possession of Cocaine with the

intent to sell as charged." (Ex. C, p. 61). The state court was also correct in finding that petitioner's sentence of 15 years was not an enhanced sentence – it was within the statutory maximum for a second degree felony. *See* Fla. Stat. §§ 775.082(3)(c) and 893.13(a)(a) (2006). Petitioner has utterly failed to show that the state court's rejection of his claim was contrary to clearly established Federal law, involved an unreasonable application of clearly established Federal law, or was based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 6), challenging the judgment of conviction and sentence in *State of Florida v. Cedric Doles* in the Circuit Court for Bay County, Florida, Case No. 06-2883 be DENIED, and the Clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 17th day of April, 2013.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).